UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALICIA PAGAN,
on behalf of Jonathan Delgado,

                          Plaintiff,

                                                                   DECISION AND ORDER

                                                                   02-CV-6636L

                          v.

JOANNE B. BARNHART,

                          Defendant.
_____


BACKGROUND

This is an action to review the final decision of the Commissioner of Social Security ("Commissioner") that an infant, Jonathan Delgado ("Jonathan"), is no longer disabled and not entitled to benefits effective May 1, 1999. Jonathan's mother, Alicia Pagan ("Pagan"), had filed an application under Title XVI for Supplemental Security Income ("SSI"), alleging that her son was disabled on account of mental retardation. The Social Security Administration ("SSA") agreed and found Jonathan disabled with an onset date of disability of November 1, 1992.

Jonathan received benefits for almost a decade until the Social Security Administration reviewed Jonathan's case to determine if he had improved to such an extent that he was no longer disabled. That review, a Continuing Disability Review ("CDR"), was conducted and the SSA determined that Jonathan's disability ceased effective May 1999 because of what it determined to be a "medical improvement." Pagan ultimately requested a hearing and one was held before

Administrative Law Judge ("ALJ") James E. Dombeck. In a decision filed May 8, 2001, ALJ Dombeck found that Jonathan had not been disabled since May 1999 and was, therefore, no longer eligible for SSI benefits. The Appeals Council denied review on October 4, 2002 and that became final decision of the Commissioner. This civil action to review that final decision followed. *See* 42 U.S.C. § 405(g).

DISCUSSION

Jonathan was originally found to be disabled because his condition met the Mental Disorder Listing for Mental Retardation at 20 C.F.R., App. 1, Subpt. P of pt. 404 (hereinafter "Listing"). Listing 112.05D directs a finding of disability because of mental retardation if the child has

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

The SSA conducted its CDR of Jonathan's medical and mental condition. In doing so, it was required to follow the pertinent regulations and policies. The Regulation at 20 C.F.R. § 416.994a(b) prescribes a three-step process for determining whether there has been any medical improvement in the impairments that originally were found to warrant payment of benefits and whether the child's present impairments are such that he should still be classified as "disabled."

In sum, the sequential inquiry is as follows:

1. Does the child have a severe impairment or combination of impairments?

2. Does his impairment meet the severity of any impairment contained in the Listings?

3. Are his impairments functionally equal to those set forth in the Listings?

- 2 -

*See* 20 C.F.R. § 416.994a(b).

The parties here do not dispute the applicable test nor do they dispute that the Commissioner must determine whether the child is presently disabled at the time of the CDR and must consider all impairments in making that assessment, including those that the child did not have when originally found to be disabled.

In conducting his review, although finding that Jonathan had severe impairments, the ALJ determined that those impairments did not meet any of the Listings and also that Jonathan's impairments were not functionally equivalent to any listed impairment.

Plaintiff disagrees. She contends that the ALJ erred in finding that there had been an improvement in Jonathan's condition to a degree that he did not continue to meet the Listing for mental retardation. Alternatively, plaintiff contends that the ALJ erred in finding that the impairments were not functionally equivalent to a listed impairment.

The Commissioner has established the process for determining whether a child's mental impairments are functionally equivalent to a listed impairment, at 20 C.F.R. § 416.926a(b)(1)(I-vi). The SSA must consider six areas of functioning or "domains" in making the determination and those domains are as follows:

1. Acquiring and using information.

2. Attending and completing tasks.

3. Interacting and relating to others.

4. Moving about and manipulating objects.

5. Self-care.

6. Health and physical well-being.

The rules provide that if a child has an "extreme" limitation in any one of the six domains or a "marked" limitation in any two of the six areas of functioning, then he is deemed to have an impairment that functionally equals a listed one.

In this case, the Commissioner, by virtue of the ALJ's decision, found that Jonathan had a marked impairment in only one domain: acquiring and using information. That finding is at the heart of this appeal. Plaintiff contends that the evidence supports a finding that Jonathan had an "extreme" impairment in the domain of acquiring and using information and also that he had a "marked" impairment in the domain of attending and completing tasks.

The Regulations give guidance as to what constitutes a "marked" limitation and a "extreme" limitation. 20 C.F.R. § 416.926(e)(2) provides that:

> We will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926(e)(3) provides that:

> We will find that you have an 'extreme' limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Extreme' limitation also means a limitation that is 'more than marked.' 'Extreme' limitation is the rating we give to the worst limitations. However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

Of course, generally when reviewing decisions of the Commissioner under § 405(g), the Court's inquiry is whether the decision is supported by substantial evidence in the record as a whole. *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002). The evidence, though, must be evaluated under the proper legal standard and if the Commissioner or the ALJ fails to do so, then the determination will not be upheld. *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir. 1984).

In essence, the Commissioner determined that Jonathan's medical condition had improved so that he now failed to meet a Listing and that, though, having severe limitations, those limitations did not amount to the functional equivalent of a listed impairment. After reviewing the record, I believe that there is substantial evidence to support the Commissioner's decision. The record does contain some conflicting evidence that could point to a contrary conclusion, but I believe that there is substantial evidence to support the ALJ's decision. The Commissioner, and not the Court, is responsible for weighing conflicting evidence. *Clark v. Commissioner,* 143 F.3d 115, 118 (2d Cir. 1998).

It is not disputed that Jonathan still has severe impairments. The ALJ listed Jonathan's condition as evidencing "receptive/expressive language and vocabulary delays; borderline intellectual functioning; attention deficit hyperactivity disorder, combined type; and history of asthma" which he found to be severe impairments. (17).

As to whether there has been an improvement from Jonathan's original determination that he met the Listing for mental retardation, I agree with the ALJ's decision. In 1992, the SSA determined that Jonathan met Listing 112.05 for mental retardation. That was based on his full-scale IQ of between 60 and 70. The ALJ found that a more recent IQ test placed Jonathan well above that range. Dr. John Thomassen, Ph.D conducted a consultative intellectual examination in February 1999. He concluded, in part, that Jonathan obtained a verbal IQ score of 72, a performance score

of 82 and a full-scale IQ score of 75.  Thomassen found that his true-scale IQ was, therefore, between 70 and 82.  (15, 233).  Dr. Thomassen found that Jonathan could follow age appropriate directions and "perform age appropriate tasks." (234).  There is no other compelling evidence in the record that these IQ tests are faulty or should not be considered.  There is no other evidence to suggest lower IQ tests.  The ALJ had sufficient basis then to determine that Jonathan's condition had improved and that he no longer met the Listing for mental retardation based on the IQ tests.

The next area of dispute concerns whether Jonathan remains disabled because his severe limitation is the functional equivalent of listed impairment.  The principal area of dispute is the domain of "attending and completing tasks."

The ALJ did find a marked impairment in one domain:  "acquiring and using information." He did not, however, find a "marked" impact in any other category.  Plaintiff does not challenge the finding as to any of the other domains, except that involving "attending and completing tasks."  The record amply supports a finding of less than marked impairment in all other areas.  All reports indicate that Jonathan has good social skills, motor skills and that he adequately cares for himself.

The Regulations at 20 C.F.R. § 416.926a(e) define a "marked" limitation as one where the limitation *seriously* interferes with completion of an activity.

In his decision, the ALJ noted that although Jonathan was "easily distracted" the record failed to demonstrate that he is unable to complete tasks provided to him. (21).  Jonathan was not seriously affected.

Although Jonathan was examined by several professionals in the review process, none of them noted that Jonathan had a "marked" or "extreme" disability in the area of "attending and completing tasks."  Dr. Thomassen, who performed an intellectual examination in February 1999,

concluded that Jonathan "would be able to follow age appropriate directions and perform age appropriate tasks." (234). He also noted that his full-scale IQ was between 70-82.

He noted that Jonathan had "relative strengths" and scored in the "average range" in his abilities to sort essential from non-essential details, persist in rote type tasks, perceive non-verbal social relations and perform mental computations. (233).

Christine Lembach, a Speech/Language Pathologist, dealt mostly with Jonathan's weak communication skills. But, she did note that Jonathan "demonstrated the ability to comprehend and follow simple and some complex directions." (257).

Morris Newman, Ph.D., a psychologist for SSA, reviewed Jonathan's record in May 1999 on a consultative basis. He noted that Jonathan's limitations were all less than marked. (244). In his report, (245), he stated, in part, that Jonathan's speech "intelligibility" was fair to good. He was generally able to interact appropriately with peers and adults and is considered polite. He was quite distractable at times, but is easily redirected and, although he is frustrated at times, he does not present a behavioral problem. He concluded that the impairments, although severe, did not meet or equal the severity of any Listing.

Dr. Richard Wolfe, Ph.D. also conducted a psychiatric examination of Jonathan and issued a report in August 1999. (261). The ALJ summarized his report in his decision. (16). Dr. Wolfe noted that Jonathan's receptive language skills were "below average." (264). Jonathan appeared quite coherent and goal directed. Dr. Wolfe assessed Jonathan's "attention and concentration skills" as "probably mildly impaired . . . ." (265). He did state that Jonathan would have "difficulty" attending to and following direction and completing age appropriate tasks, but if those problems could be controlled with medication, he believed Jonathan could learn in accordance with his "current cognitive functioning." (266).

The record also reflects that some of Jonathan's teachers marked forms that indicated Jonathan was easily distracted, that he required assistance in his work and that in their view he had a "marked" impairment in maintaining activities for a period of time.  He needed reminders to complete his tasks, e.g., (338-39).  This evidence, however, is not so overwhelming as to require reversal.  *See Clark*, 143 F.3d at 118 (the Court's role is not to weigh conflicting evidence or review the case *de novo*).

When viewed in its entirety, I believe that there was substantial evidence to support the ALJ's decision that Jonathan's condition had improved, that he was progressing through school, albeit with some assistance, and that his impairments were not so significant as to be characterized as "marked" except in the domain of "acquiring and using information."  The record demonstrates that the ALJ's decision is supported by substantial evidence and, therefore, must be affirmed.

CONCLUSION

The final decision of the Commissioner of Social Security that terminated Jonathan Delgado's supplemental security income benefits is affirmed.  The Commissioner's motion (Dkt. # 7) is granted and plaintiff's motion (Dkt. # 9) is denied.  The complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 19, 2006.